Shamus T. O'Doherty, WSBA #43082
Randall | Danskin, P.S.
601 W. First Avenue, Suite 800
Spokane, WA 99201
Telephone: (509) 747-2052
Fax: (509) 624-2528
sto@randalldanskin.com

Daniel B. Mestaz (*pro hac vice* pending)
Matthew Hersh (*pro hac vice* pending)
MESTAZ LAW
5090 North 40th Street
Phoenix, AZ 85018
Telephone: (602) 806-2068
daniel@mestazlaw.com
matt@mestazlaw.com

HON. STANLEY A. BASTIAN

*Attorneys for Defendants-Counterclaim Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

AXIS RESIDENTIAL, LLC, a
Washington limited liability company;
and SUNSET MANAGEMENT, INC.,
a Washington corporation,

               Plaintiffs,

v.

DUAL PATH, LLC, an Arizona
limited liability company; and
MYCOMMUNITY.APP LLC, an
Arizona limited liability company,

               Defendants.

DUAL PATH, LLC, an Arizona
limited liability company,

               Counterclaim
               Plaintiff,

No. 2:24-cv-00317-SAB

**ANSWER OF DEFENDANTS
DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC;
COUNTERCLAIM OF
DEFENDANT DUAL PATH,
LLC**

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 1

v.

AXIS RESIDENTIAL, LLC, a
Washington limited liability company;
SUNSET MANAGEMENT, INC., a
Washington corporation; and INLAND
CONSTRUCTION &
DEVELOPMENT CO., dba Inland
Group, a Washington corporation,

         Counterclaim
         Defendants.

## ANSWER

Defendants Dual Path, LLC and MyCommunity.App, LLC answer the complaint as follows:

### Nature of the Action

1.    Admit that the complaint purports to assert claims of unjust enrichment, quantum meruit, conversion, and declaratory judgment. Deny the remaining allegations.

### Parties

2.    Admit.

3.    Admit.

4.    Admit.

5.    Admit.

6.    Admit.

7.    Admit.

**Jurisdiction and Venue**

8.   Admit.

9.   Admit that the claims in this lawsuit arise to some extent out of certain actions taken in and certain services provided in Washington. Deny the remaining allegations.

10.   Admit that this Court has personal jurisdiction over Defendants. Deny the remaining allegations.

11.   Admit that venue is proper in this Judicial District. Deny the remaining allegations.

**Factual Allegations**

12.   Admit.

13.   Defendants have no personal knowledge of Plaintiffs' reputation and therefore deny this allegation on that basis.

14.   Admit.

15.   Admit.

16.   Admit.

17.   Admit, except that Dual Path not only "previously" provided such services but also continues to provide such services.

18.   Admit that Plaintiffs and Dual Path engaged in discussions wherein Dual Path would create an application, at first referred to by the parties as Connected

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 3

Community but eventually renamed by Dual Path as MyCommunities, providing certain interactive services to residents of senior living facilities. Admit that the first authorized users of the application were Plaintiffs and that Plaintiffs were given a non-exclusive license to use the application under the brand name MyAffinity. Deny that Dual Path created the MyCommunities application "specifically" for Plaintiffs or their Affinity residents. Deny that Dual Path agreed to identify or provide any "scribes" in connection with this work. Deny all remaining allegations.

19.     Admit that the version of the MyCommunities application that Dual Path created and licensed to Plaintiffs is branded by Plaintiffs as MyAffinity. Deny all remaining allegations.

20.     Admit that Dual Path began coding of the MyCommunities application in January 2021. Deny all remaining allegations.

21.     Admit that Plaintiffs paid Dual Path for its services and provided a *de minimis* amount of testing for the MyCommunities application. Deny that Plaintiffs provided "details" for or any meaningful testing of application. Deny all remaining allegations.

22.     Deny.

23.     Admit that Dual Path provided the MyCommunities application to a small number of Affinity residents for testing. Deny all remaining allegations.

24.    Admit that Dual Path engaged the services of a third-party software developer and a freelance project manager in the development of the MyCommunities application. Deny that any of these persons acted as "scribes." Deny all remaining allegations.

25.    Admit that certain Dual Path employees worked on the development of the MyCommunities application. Deny that any of these persons acted as "scribes." Deny all remaining allegations.

26.    Admit that Plaintiffs and Dual Path discussed generally the ownership of the MyCommunities application and its rights. Deny that the parties ever came to any agreement that Plaintiffs would own the application or that the parties ever discussed any such "fact." Deny all remaining allegations.

27.    Admit that the parties discussed a variety of draft agreements in connection with the MyCommunities application, including one that was drafted unilaterally by Plaintiffs, with no input by Dual Path, and denominated by them a Master Services Agreement. Deny any implication that the parties ever agreed to the Master Services Agreement unilaterally drafted by Plaintiffs or entered into any signed writing at all in connection with the application. Deny all remaining allegations.

28.    Admit that Dual Path was provided by Plaintiffs with an agreement drafted unilaterally by Plaintiffs, with no input from Dual Path, that was

ANSWER OF DEFENDANTS DUAL PATH, LLC AND MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL PATH, LLC - 5

denominated a Master Services Agreement. Admit that this unilaterally-drafted Master Services Agreement, if it had been agreed to in a signed writing, would have provided that Plaintiffs would own the MyCommunities application. Deny any implication that the parties ever agreed to the Master Services Agreement as unilaterally drafted by Plaintiffs or entered into any signed writing at all in connection with the application. Deny all remaining allegations.

29.    Admit that Dual Path did not sign or return the Master Services Agreement unilaterally drafted by Plaintiffs. Deny any implication that Dual Path, in not doing so, "failed" to comply with any obligation or implicitly agreed in any way to the terms of that unilaterally-drafted agreement. Deny all remaining allegations.

30.    Admit that the parties discussed a potential joint venture in which Dual Path would retain ownership of the MyCommunities application while granting Plaintiffs a geographically-limited exclusive license to market the application. Deny that the parties ever entered into any written agreement with respect to these discussions. Deny all remaining allegations.

31.    Deny.

32.    Admit that Dual Path was paid for its services in developing the MyCommunities application. Deny that Plaintiffs played any role in the

development of that application or that Dual Path "assist[ed]" Plaintiffs in any way in Dual Path's own development of that application. Deny all remaining allegations.

33.    Admit.

34.    Admit that the amount of $575,000 was in compensation for Dual Path's services in developing the version of the MyCommunities application that Plaintiffs exploit, under the terms of a non-exclusive license, under the brand name MyAffinity. Deny that the payment was in exchange for any intellectual property rights in connection with the MyCommunities application. Deny all remaining allegations.

35.    Deny.

36.    Admit that Dual Path has been fully paid for its services in developing the MyCommunities application that Plaintiffs exploit, under the terms of a non-exclusive license, under the brand name MyAffinity. Deny that any portion of the $575,000 in payments was in exchange for any intellectual property right in the MyCommunities or MyAffinity applications other than a non-exclusive license to continue to use the MyAffinity application, assuming certain conditions continue to be met.

37.    Admit that Dual Path has not provided Plaintiffs with the source code to the MyAffinity application. Deny any implication that it had any responsibility to do so. Deny all remaining allegations.

38.   Deny.

39.   Deny.

40.   Deny.

41.   Admit that Plaintiffs currently hold a non-exclusive license permitting them to continue to use the MyAffinity application under certain conditions, one of which is the payment of monthly fees. Deny all remaining allegations.

42.   Deny.

43.   Deny.

44.   Admit that Plaintiffs currently hold a non-exclusive license permitting them to continue to use the MyAffinity application under certain conditions, one of which is the payment of monthly fees. Admit that the continued compliance with these conditions, including the payment of those fees, is a condition of that non-exclusive license. Deny all remaining allegations.

45.   Admit that Defendants have not "reimburse[d]" Plaintiffs for any monthly fees that Plaintiffs have paid to Dual Path in connection with the application. Deny any implication that Defendants have ever had any obligation to make any such "reimbursement." Deny all other allegation.

46.   Admit that Defendants have not "reimburse[d]" Plaintiffs for the fact that Dual Path tested the MyCommunities application with certain residents of

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 8

Plaintiffs' residential properties. Deny any implication that Defendants have ever had any obligation to make any such "reimbursement." Deny all other allegations.

47.    Admit that Defendants offer to their clients a resident engagement platform, available as a mobile application called MyCommunities Engagement, based on intellectual property that Dual Path created and owns. Deny all remaining allegations.

48.    Admit that there are certain functional and design similarities between the MyCommunities Engagement application and the MyAffinity-branded version of that application. Deny all remaining allegations.

49.    Admit that Defendants offer to their clients a resident engagement platform, available as a mobile application called MyCommunities Engagement, based on intellectual property that it created and owns. Deny all remaining allegations.

50.    Admit that Defendants have not obtained permission from Plaintiffs to exploit the intellectual property that Dual Path owns. Deny all remaining allegations.

51.    Admit that Defendants have not compensated Plaintiffs for Dual Path's exploitation of the intellectual property that Dual Path owns. Deny all remaining allegations.

52.    Deny.

53.    Deny.

54.    Deny.

55.    Deny.

56.    Deny.

## Count 1

## Unjust Enrichment and Quantum Meruit

57.    Defendants reassert every response to every allegation in the foregoing paragraphs as if set fully herein.

58.    Deny.

59.    Deny.

60.    Deny.

61.    Deny.

62.    Deny.

63.    Deny.

64.    Deny.

65.    Deny.

66.    Deny.

67.    Deny.

68.    Deny.

**Count 2**

**Conversion**

69.     Defendants reassert every response to every allegation in the foregoing paragraphs as if set fully herein.

70.     Deny.

71.     Deny.

72.     Deny.

73.     Deny.

74.     Deny.

75.     Deny.

76.     Deny.

77.     Deny.

**Count 3**

**Declaratory Judgment**

78.     Defendants reassert every response to every allegation in the foregoing paragraphs as if set fully herein

79.     Deny.

80.     Deny.

81.     Deny.

ANSWER OF DEFENDANTS DUAL PATH, LLC AND MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL PATH, LLC - 11

82.    Deny.

## **Prayer for Relief**

Defendants pray for the following relief:

A.    Enter judgment in favor of Defendants and against Plaintiffs on all Counts alleged herein.

B.    Award Defendants their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

C.    Award Defendants their costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.

D.    Award Defendants their excess costs, expenses, and attorneys' fees pursuant to 28 U.S.C. § 1927.

## **Affirmative Defenses**

1.    The claims are preempted under the Copyright Act, 17 U.S.C. § 301.

2.    The Plaintiffs have failed to join a necessary or indispensable party, namely Inland Construction & Development Co., dba Inland Group.

3.    The claims are barred by the doctrine of laches.

4.    The claims are barred by the doctrine of waiver.

5.    The claims are barred by the doctrine of estoppel.

ANSWER OF DEFENDANTS DUAL PATH, LLC AND MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL PATH, LLC - 12

## COUNTERCLAIM

Dual Path, LLC, files this counterclaim against Inland Construction & Development Co., Sunset Management, Inc., and Axis Residential, LLC (collectively, "Inland"), and for its complaint states the following:

### Summary of Claims

1.    Dual Path asks the Court to declare the obvious: that it owns the software that it wrote. Dual Path was engaged by Inland to draft a software application that would enable Inland to better service the residents of its senior living facilities. Dual Path wrote every word of that software code. Inland, by contrast, did not write even a single letter. Nor did Inland review, test, debug, or interact in any way with that code. Inland has never, to this date, even seen that code. Dual Path owns what it wrote.

2.    Dual Path not only drafted the source code at issue in this lawsuit; it also came up with almost every idea that is embedded in the code. Most software ownership disputes involve one party who requests software with certain functions and another who implements those functions into the tangible form of source code. Even in those cases, the software developer is always the rightful author—and therefore the copyright owner. But this case presents even more of an extreme. Not only did Inland not write code; it did not even come up with most of the *functions* of that code. Inland told Dual Path, in effect: we need an application for our residents—

now tell us what that application should do. Dual Path came up with virtually every single function that application would contain—and then wrote those very functions into software code. Both the ideas and the expression belong to Dual Path.

3.    In light of Dual Path's authorship, the only way that Inland could own the code is if Dual Path transferred the code to it in a signed written agreement. But the parties never entered into any such agreement. Indeed, the closest that the parties ever came to agreeing was in a discussion over a term sheet that, if implemented, would have made even more crystal clear that *Dual Path* owned the code. But that agreement, too, was not rendered to a signed writing. At best, Inland has a nonexclusive license to that code—a license that will remain in place only for as long as it continues to meet the conditions of that license. Inland has nothing else.

4.    Finally, Dual Path not only owns the source code at issue in this lawsuit. It also owns a wide array of intellectual property that it created in connection with that code. That includes the instructional materials relating to the application, publicity materials relating to the application, and even certain elements of the logo—original elements that Dual Path itself designed—that Inland uses in its implementation of the application.

## **The Parties**

5.    Dual Path, LLC ("Dual Path") is an Arizona limited liability company, headquartered in and doing business in Maricopa County, Arizona.

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 14

6.      MyCommunity.App, LLC ("MyCommunity.App") is an Arizona limited liability company, headquartered in and doing business in Maricopa County, Arizona.

7.      Inland Construction & Development Co., dba Inland Group ("Inland Group"), is a Washington corporation, headquartered in and with its principal place of business in Spokane, Washington.

8.      Sunset Management, Inc. ("Sunset"), is a Washington State corporation registered in the State of Washington, with its principal place of business in Spokane, Washington.

9.      Axis Residential, LLC ("Axis"), is a Washington State limited liability company registered in the State of Washington, with its principal place of business in Spokane, Washington.

10.     Inland Group, Sunset and Axis collectively own or manage a number of senior living communities through the Western half of the United States that are known by the brand name Affinity Living Communities ("Affinity"). Unless the context requires otherwise, the term "Inland" will be used to refer to Inland Group, Sunset and Axis collectively.

11.     Joinder of Inland Group as a counterclaim defendant is appropriate here because the claims against all three counterclaim defendants are in all respects identical. Inland Group is the parent company to the other two counterclaim

defendants and its executives took part in every single interaction that is at issue in this case. For all intents and purposes, Inland Group is the real plaintiff in interest in the underlying lawsuit. It belongs as a counterclaim defendant here.

## Jurisdiction and Venue

12.    This is a civil action arising under the copyright laws of the United States, 17 U.S.C. §§ 101 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions)

13.    This Court has personal jurisdiction over each of the counterclaim defendants because their principal bases of business are in the State of Washington.

14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) because each of the counterclaim defendants resides in this Judicial District and a substantial part of the events or omissions giving rise to this claim occurred in this Judicial District.

## The MyCommunities Platform

15.    Dual Path provides a wide range of technology solutions for the managers of multi-tenant properties. Its clients include senior living communities, multifamily residences, and new real estate developments. Among the technology solutions that Dual Path provides to its clients are dependable high-speed internet access, managed IT services, and a network of interconnected smart devices—smart

locks, thermostats, lights, and even toasters—that create a web of interconnected systems that enhance automation and efficiency. Dual Path's custom technology solutions are well known for their best in class technology, ease of use, reliability, and customer service.

16.    One of the technology solutions that Dual Path provides for its clients is a resident, family and staff platform known as MyCommunities. Developed exclusively for senior living, the MyCommunities application by Dual Path works to improve resident retention and increase staff efficiency by providing an interactive digital community and an innovative way to connect with residents. Residents in a senior living facility can use the app to chat with other residents and staff, participate in interactive games with other residents, control smart devices in their apartment, enjoy virtual fitness classes, and even order food and transportation through integrated solutions with third parties such as Uber.

17.    The MyCommunities platform encompasses two different software programs. One program, the MyCommunities App, is the user-facing application that residents and their families can use to take advantage of the various features of the program. It is available on the iPhone and Android stores as a downloadable application. The other program, known as the staff application, is a program that building managers and Dual Path staff can access to perform oversight and participate in interactions with residents. The source code for the two programs is

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 17

combined in a single code repository. Dual Path holds copyright registration No. TX 9-430-385 in that code repository.

18.    The MyCommunities application is developed specifically for use by senior citizens. As a result, it is designed with oversized icons and large text. A sample of screenshots of the MyCommunities application, as viewable on the Apple Store, is below:



19.    Dual Path built and designed the MyCommunities application with the expectation that it would be licensed to senior living communities throughout the United States. One senior living community that it has licensed to use the application is Affinity, which brands the application as MyAffinity. A sample of screenshots of the licensed MyAffinity application, as viewable on the Apple Store, is as follows:

## 2018: Dual Path Creates the First MyCommunities Concept

20.     Dual Path created the MyCommunities platform with the expectation that it would be initially licensed by Inland for its Affinity senior living community. Dual Path was then, and remains today, the internet and IT services provider for Affinity. Dual Path does so under a network of interconnected agreements, some written and some implemented informally, pursuant to which it provides internet connectivity, IT engineering and support, and a wide range of other technology services for Affinity residents.

21.     The idea for the MyCommunities application came out of discussions between Dual Path's CEO Eric Markow and two executives of Inland, Scott Scelfo and Ryan McIntyre. The original concept was for Dual Path to create, on Inland's behalf, a resident portal for use by residents of the Affinity communities. But Inland

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 19

did little to develop the project other than at a conceptual level. In fact, through the development of the project, Dual Path took every step necessary to implement those high-level concepts into more granular ideas and functions—and then to implement those ideas and functions, in turn, into tangible work product.

22.    Dual Path began giving expression to Inland's high-level concepts in the middle of 2018. On August 15 of that year Dual Path's Markow sent to Inland's Scelfo and McIntyre an email entitled "Affinity Resident Portal Mockup." The email contained a three-page pdf file with a proposed design of the app's home page, including a weather portal, an email portal, and links to various apps such as Hulu, Netflix, Amazon, and Uber Eats. It was Dual Path's idea to include these three elements within the home page. It was Dual Path that made the decision about which apps to link. And it was Dual Path that did all of the work to compile, design, and arrange the elements within that page:

/////

/////

/////

/////

/////

/////

/////

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 20



23.    Inland's McIntyre responded right away, saying "I like the direction!" He also asked Dual Path to "[k]eep thinking about this." Neither McIntyre nor anyone else at Inland provided any substantive comment whatsoever beyond these general expressions of approval. This established a pattern that would become typical of the relationship between Dual Path and Inland over the remainder of the application's development: Inland threw out the high-level concepts, while Dual Path filled in all of the blanks.

**2019: Dual Path Continues to Model Additional Features for the Platform**

24.    Dual Path continued to "think about" the application, at Inland's request, over the course of the next year. In June 6, 2019, Dual Path provided Inland a PowerPoint deck entitled "Smart Apartment & Technology Solutions." That deck, written by Dual Path, contained a page entitled "Smart Apartment Packages" which

proposed that "Dual Path would build a custom branded app that allow[s] residents to control their devices from a single application":

## Smart Apartment Packages

- Dual Path would build a custom branded app that allow residents to control their devices from a single application
- Dual Path would provide technical support for these devices and rely on-site staff for repairs/maintenance, such as switching out light blubs



25.    Inland's McIntyre wrote back shortly thereafter in response: "I love this and think moving in this direction will make a big difference in our ability to market and sell our product." McIntyre asked for further detail, but he made no substantive suggestion or comment about Dual Path's proposal.

26.    Markow followed up shortly thereafter with a lengthy description of the concepts that Dual Path planned to express in its development of the app. In the course of that email, Markow set out the concepts behind the app and suggested a list of specific services that the app could provide. Markow explained that what Dual Path was proposing was that "Dual Path will provide, *for the*

*technologies/applications we curate*, support with installation of apps on customer devices, signup for those services, training on how to use them, and support if they're having trouble.":

> The idea here is to provide residents access to targeted, enhanced support services that provide them with access to frontline help for some key, life enhancing applications.
>
> The areas we suggest targeting are services that you and I may take for granted, but are challenging for seniors. If they had access to these services, we feel it would make a huge difference for your customers:
>
> -Safe Transportation (Uber)
>
> -Grocery Delivery (Instacart)
>
> -Video Chat (Skype)
>
> -Entertainment (Netflix)
>
> -"Stuff" (Amazon)
>
> -Prepared Food Delivery (Postmates)
>
> …
>
> What we're proposing is that Dual Path will provide, for the technologies/applications we curate, support with installation of apps on customer devices, signup for those services, training on how to use them, and support if they're having trouble. This would occur via a combination of telephone support, enhanced on site interaction and a new Affinity Resident Homepage, which will include articles, videos and can even incorporate local data from your staff (announcements, events, ads, etc). We would have a dedicated team providing these services.

27.    Dual Path continued to take steps to turn those concepts into granular ideas—and then to express those ideas in tangible written form. On August 15, 2019,

ANSWER OF DEFENDANTS DUAL PATH, LLC AND MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL PATH, LLC - 23

Dual Path's Markow sent to Inland's McIntyre a lengthy PowerPoint presentation with further details about the MyCommunities application. The PowerPoint contained, for example:

A. A mockup showing the home page of the app compared with other, less easily-readable apps:



B. A chart showing the different applications and portals:

/////

/////

/////

/////

/////

/////

/////

/////

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 24



C. An example of code that could be used to control smart devices:



28.    Neither McIntyre nor anyone else at Inland made any edits to the PowerPoint nor offered any substantive comments on the ideas expressed within it.

29.    On August 29, 2019, Dual Path created and sent to Inland's McIntyre and Scelfo a proposed "feature matrix" with a list of several dozen features for the application and the categories to which they should belong. Neither McIntyre nor Scelfo nor anyone else at Inland made any edits to the matrix nor offered any substantive comments on the features expressed within it.

30.    On September 11, 2019, Dual Path incorporated the features of its August 29 matrix into a PowerPoint containing an early mock-up of the application and sent that PowerPoint to McIntyre and Scelfo:

/////

/////

/////

/////

/////

/////

/////

/////

/////

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 26



31.  Neither McIntyre nor Scelfo nor anyone else at Inland made any substantive edits to that PowerPoint nor offered any substantive comments on the features expressed within it.

**September 2020: Inland Adopts Dual Path's PowerPoint as Its Own**

32.  Over the course of the next two years, Dual Path continued to think of different features for the application, make mockups of those features, and correspond with Inland over those mockups. Inland officials would occasionally tell Dual Path that it ranked certain features above others in the event that funding could not cover all of the features. As a general practice, Inland did not direct Dual Path to

add, remove, or alter features. And as a general practice, Inland did not make any substantive edits to the manner in which Dual Path implemented, in mockups and other graphics, the features that Dual Path envisioned. While Inland had a general conception of the service it wanted, it for the most part was content to let Dual Path's Markow be, in effect, the "idea guy" behind that service.

33.    In fact, Inland liked Dual Path's ideas so much that it incorporated them as its own. On September 4, 2020, Inland's McIntyre wrote to Inland's Scelfo as well as Darin Davidson, Inland's President. The email said, among other things, the following: "I really think pushing the use of technology into our communities and individual units will allow us to differentiate us and create an environment more conducive to aging in places." Davidson responded: "Ryan do you have a plan?" McIntrye responded: "Yes, Scott and I have a plan. See attached."

34.    The attachment to McIntyre's email—that is, the "plan" that he described to the President of his company—was a 20-page PowerPoint *created by Dual Path*. In fact, it was *a portion of the very same PowerPoint that Dual Path's Markow had sent to McIntyre in August 2019*.

35.    It was no surprise that McIntyre adopted the Dual Path plan as Inland's own. Indeed, in the same email, McIntyre sang the praises of Dual Path's "vision" when it came to the application: "They completely understand the value from a

sales/positioning perspective and see our vision of creating a community that allows residents to age in place utilizing technology services."

**November and December 2020: Dual Path Prepares to Code the Application**

36.    By November 2020, Dual Path had assembled the team that it would use to code the application. The team included several development engineers from Quimbik, an outside developer engaged by Dual Path; two fulltime Dual Path employees; and one project manager hired by Dual Path as a freelance project manager.

37.    On November 4, 2020, Dual Path's Markow emailed Inland's McIntyre to give an update on development of the application. He included in the email a screenshot of part of the Dual Path team working on the development along with an excerpt of Dual Path's project scope sheet. In the screenshot were Markow, several Quimbik engineers, the two Dual Path employees, and the one Dual Path project manager. Naturally, no Inland employee was included in the screenshot—because no Inland employee had any hands-on role in the application's development.

///// 

///// 

///// 

///// 

/////



**2021: Dual Path Writes the Software Code for the Application**

38.     Dual Path and its team began coding the application on January 4, 2021. No Inland employee played any role whatsoever in creating, editing, bug testing, or otherwise reviewing the coding. To this day, no Inland employee has even seen the source code, much less interacted in any way with it.

/////

/////

/////

/////

ANSWER OF DEFENDANTS DUAL PATH, LLC AND MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL PATH, LLC - 30

39.    Dual Path was able to quickly code the application. On February 3, 2021, Dual Path's Markow sent to Inland's McIntyre a complete mockup that it had created of the application. The mockup, which remains viewable on the internet at https://xd.adobe.com/view/e9403910-ea68-41b3-9178-868fe642b5c0-bc13/, shows



a product that is strikingly similar to the one in place today:

40.    Dual Path did much more than code the application. It also created a *logo* for the application. The basic Affinity logo is a red handwritten "Affinity" with

green leaves above it and the wording "LIVING COMMUNITIES" below it. To transform that into a logo for the application, Dual Path created a stylized "My" in a green circle shape and integrated it into one of the working models, in an original and creative way, with the rest of the logo—thus transforming "Affinity" into "MyAffinity." For the final release version, Dual Path made even further original alterations to the logo, implementing the stylized "My" within a house shape and altering the manner in which that shape was conjoined within the rest of the logo.

41.    Dual Path also created the training guides to accompany Inland's branding of the application. The website https://myaffinity.app/affinityonsitestaff/ contains links to 11 different pdf documents bearing names such as Getting Started with MyAffinity, MyAffinity Staff Overview, Using the MyAffinity Staff Portal, and the like. Dual Path created all of these training manuals.

42.    Dual Path also created Inland's own website portal for the application. Shortly below the top of the https://www.affinityforliving.com/ webpage is a section entitled MyAffinity App. Clicking the "Learn More" button takes the visitor to https://myaffinity.app/, which in turn provides explanatory information about the features of the application and links to the Apple and Android stores where the app can be downloaded. Dual Path wrote the text for that webpage too.

43.    Version 1.0 of the application, branded MyAffinity, went live on October 19, 2021.

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 32

## **The Parties Never Enter Into a Written Transfer Agreement**

44.     Dual Path always believed and assumed that, in the absence of an agreement to the contrary (which was never reached), it would retain ownership of the intellectual property related to the application—including the source code, the application interface, the application user manuals, the application webpage, and the original contribution it made to the application logo. Moreover, at no time did Dual Path or Inland enter into any written agreement—and certainly never signed any such agreement—that would transfer ownership to any Inland entity of any of the intellectual property related to the application.

45.     On December 24, 2020, Dual Path's Markow sent to Inland's McIntyre a proposed Development Master Agreement. The draft agreement made clear that Dual Path, not Inland or any of its affiliates, would own the software as well as all other intellectual property rights.

> 4.1.   Company [Dual Path] agrees that all intellectual property, including copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries, trade secrets or patents (collectively, "Inventions") conceived, made or discovered by Company, or any of its consultants, employees or agents, solely or in collaboration with others, during the period of this Agreement which relate in any manner to the business of the Company that Company, or any of its consultants, employees or agents, may be directed to undertake, investigate or experiment with or which Company, or any of its consultants, employees or agents, may become associated with in work, investigation

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 33

> or experimentation in the line of business of the Company
> in performing the Services hereunder, are the sole property
> of the Company.

46.    On January 18, 2021, Dual Path's Markow sent Inland's McIntyre another draft of the agreement. This draft, too, contained the same proposed clause maintaining ownership of the intellectual property in Dual Path.

47.    On April 21, 2021, Inland's McIntyre sent to Dual Path's Markow a proposed draft agreement, entitled a Master Services Agreement. That draft agreement would have provided for Sunset, an Inland affiliate, to own all of the intellectual property arising out of the project. Dual Path did not sign this agreement and at no point assented to this agreement in any manner.

48.    On July 6, 2021, Dual Path's Markow sent to multiple Inland executives, including McIntyre and Davidson, a proposed "term sheet" in which Dual Path and Sunset would create a joint business venture to commercialize the software platform. The term sheet stated that "Dual Path proposes to own the Software, given that Dual Path is the party with the knowledge and skill to operate, maintain, upgrade, further develop, and commercialize the Software." under the terms proposed, Dual Path would grant Sunset only an exclusive license so that Sunset could market the software to end users, limited to certain geographical regions not defined in the term sheet.

49.    On August 19, 2021, Dual Path's Markow met with several Inland executives. In the course of the meeting, the parties agreed on a concept similar to

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 34

that in the proposed term sheet, with Dual Path LLC or a new affiliate to own the software and for Inland/Sunset to have a geographically limited exclusive license for certain activities. Later that day, Markow emailed these and other points of agreement to Inland's Scott Scelfo and described them as "takeaways from today." Markow also asked Scelfo to "[l]et me know if anything isn't in alignment with your point of view." Scelfo wrote back with a one-word email: "Thanks!"

50.     The parties have not exchanged any further drafts since August 2021, nor have they come to any agreement beyond what was discussed conceptually at the August 19, 2021 meeting. Neither Dual Path nor MyCommunity.App have ever entered into any signed written agreement purporting to assign any of the intellectual property related to the application to Inland Group, Sunset, Axis, or any other entity. Dual Path has also never assigned any intellectual property related to the application to MyCommunity.App or any other affiliate.

51.     Consistent with its expectations that it would own the application, Dual Path coded the application in a way that it could be easily replicated for use with other senior living communities. Indeed, the current implementation of the staff application presents those with high-level administrator access with a dropdown that can be used to select between different senior living communities. Dual Path would not have spent the time to build in this functionality if it had expected Inland to own the code.

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 35

## **Count One: Declaration of Ownership**

52.    Dual Path realleges and incorporates all of the above paragraphs as though fully set forth herein.

53.    A substantial controversy exists between Dual Path and Inland Group, Sunset and Axis over the ownership of the software code for the MyCommunities application and all related intellectual property, including the user interface, the elements of the logo that Dual Path created, and training and publicity materials that Dual Path created.

54.    Pursuant to the Copyright Act, 17 U.S.C. §101 et seq., the Declaratory Judgments Act, 22 U.S.C. § 2202, and Fed. R. Civ. P. 57, Dual Path demands a declaration that it is the sole owner of the copyright to the following:

      A.    The source code for the MyCommunities Platform;

      B.    The graphic user interface for the MyCommunities Platform, as generated by that code; and

      C.    Those original elements of the "MyAffinity" logo that it designed, as contained within the graphic user interface generated by that code.

## **Prayer for Relief**

Wherefore, Dual Path demands judgment as follows:

A.    For declaratory relief as to the matters in controversy.

B.    For attorneys' fees and costs pursuant to 17 U.S.C. § 505.

C.    For costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.

For all other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 15th day of October, 2024.

RANDALL | DANSKIN, P.S.                MESTAZ LAW


s/ Shamus T. O'Doherty                 s/ Matthew Hersh
Shamus T. O'Doherty, WSBA #43082       Daniel B. Mestaz, *Pro Hac Vice*
Attorneys for Defendants               Pending
601 W. First Avenue, Suite 800         Matthew Hersh, *Pro Hac Vice* Pending
Spokane, WA  99201                     Attorney for Defendants
Phone: (509) 747-2052                  5090 N. 40th Street, Suite 200
sto@randalldanskin.com                 Phoenix, AZ 85018
                                       Phone: (602) 806-2068
                                       Daniel@mestazLaw.com
                                       Matt@MestazLaw.com

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 37

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served a true and correct copy of the

foregoing document on the 15th day of October, 2024, addressed to the following:

Caleb Hatch                          ☐  Hand Delivered
Lee & Hayes, P.C.                    ☐  U.S. Mail
601 W Riverside Ave. Suite 1400      ☒  E-mail/ECF
Spokane, WA 99201
Caleb.hatch@leehayes.com

By: <u>s/ Shamus T. O'Doherty</u>
    Shamus T. O'Doherty, WSBA #43082
    Attorneys for Defendants
    Randall | Danskin, P.S.
    601 W. First Avenue, Suite 800
    Spokane, WA 99201
    Phone: (509) 747-2052 / Fax: (509) 624-2528
    sto@randalldanskin.com

01018019.docx

ANSWER OF DEFENDANTS DUAL PATH, LLC AND
MYCOMMUNITY.APP LLC; COUNTERCLAIM OF DEFENDANT DUAL
PATH, LLC - 38